UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HIBBA ASIM,<br><br>    Plaintiff,<br><br>    v.<br><br>ANTONY J. BLINKEN, *et al.*,<br><br>    Defendants. | Civil Action No. 24-638 (JEB) |

## MEMORANDUM OPINION

Plaintiff Hibba Asim is a Pakistani citizen who seeks an immigrant visa by way of her marriage to a United States citizen. Her case became documentarily qualified in January 2023, but she still has not received a consular interview at the U.S. Embassy in Pakistan, the requisite next step in the visa-application process. Weary of waiting for action, she brought this mandamus action pursuant to 28 U.S.C. § 1361, contending that the delay violates the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*. She asks this Court to compel the Government to schedule her visa interview. Defendants Antony J. Blinken, Rena Bitter, Andrew Schofer, Donald Blome, and Conn Schrader (all in their official agency capacities) now move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiff has not identified any clear duty requiring the Embassy to schedule an interview for a noncitizen and, further, that the delay at hand is not unreasonable as a matter of law. Even assuming that the Government has a non-discretionary duty to interview eligible visa petitioners, the Court agrees that the delay in this case has not been impermissibly long and will therefore grant the Motion.

1

I.  **Background**

   A.  Statutory Background

The Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, permits a citizen of the United States to assist his or her spouse in attaining a visa and, ultimately, "lawful permanent resident" status. See § 1151(b)(2)(A)(i); 8 C.F.R. §§ 204.1(a)(1), 204.2(a).  Under U.S. Citizenship and Immigration Services requirements, "the first step [in helping] an eligible relative apply" for such relief is for a U.S. citizen to fill out Form I-130 on a relative's behalf. See U.S. Citizenship & Immigr. Servs., I-130, Petition for Alien Relative (last visited June 14, 2024) [https://perma.cc/5JY9-U6WR]; 8 C.F.R. §§ 204.1(a)(1).  USCIS will "generally approve" the form as long as a "qualifying relationship" has been established.  See U.S. Citizenship & Immigr. Servs., I-130, Petition for Alien Relative.  For certain immediate relatives, including spouses, if the I-130 form is approved, an immigrant visa is always available, as there are no statutory numerical limitations on the issuance of those visas.  See 8 U.S.C. § 1151(b)(2)(A)(i).

Upon approval, USCIS transfers the petition to the Department of State's National Visa Center (NVC) for processing.  See U.S. Dep't of State, Immigrant Visa Process (last visited June 14, 2024) [https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process.html].  NVC creates a case in its system for the petitioner, who is then required to fill out an online application (Form DS-260) as well as submit fees and other supporting documents.  Id.

Once the petitioner's NVC case is documentarily complete, the next step of the application process is the visa interview.  Id.  Applicants are told that "NVC will work with the appropriate U.S. Embassy or Consulate to schedule an [interview] for you."  Id.  The State Department's online timeline maintains that "NVC cannot predict when [a] case will be scheduled for an interview" since each Embassy determines the dates its interviews will be held,

and that "NVC fills these appointments in a first-in, first-out manner." Id. After the interview, as the final step, the consular officer "must" either "issue" or "refuse" the visa. See 22 C.F.R. § 42.81(a).

Factual Background

Asim became eligible to apply for a visa upon her marriage to U.S. citizen Zohaib Ali Kazi. See ECF No. 1 (Compl.), ¶ 15. In accordance with USCIS procedure, her husband filled out an I-130 form on her behalf, which was approved on October 28, 2022. Id. After receipt of the petition, NVC created Plaintiff's case on November 4. Id., ¶ 16. Asim then furnished the requisite fees and documentation, and she was notified that her case was "documentarily qualified" on January 26, 2023. Id., ¶ 17; ECF No. 1-2 (NVC Email Re: Qualification).

Unfortunately for Plaintiff, that is where matters still stand: she is awaiting an interview appointment at the appropriate U.S. Embassy (here, Pakistan). This appointment — the last remaining requirement for her visa application — remains unscheduled almost a year and a half later. Numerous follow-ups with NVC have been dead ends. See Compl., ¶¶ 20–21. Plaintiff has received "continuous responses from the NVC stating that [her] application was documentarily complete, that no further information or documents are needed from the Plaintiff, and that processing [including, apparently, the interview] will take an unknown period of time." Id., ¶ 20; see ECF No. 1-3 (NVC Email Re: Interview Inquiry). No average visa-application processing times have been provided by the State Department, NVC, or the Embassy in Pakistan, see Compl., ¶ 22, and Plaintiff alleges that her case is "likely to continue in this status for months or years without judicial action." Id., ¶ 21. As a result, Asim brought this act, lodging claims under the APA and Mandamus Act to compel Defendants to schedule her immigrant visa interview. See id., ¶¶ 4, 24–34. The Government now moves to dismiss.

## II. Legal Standard

Defendants' Motion invokes the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When a defendant brings a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "[t]he plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91 (D.D.C. 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 174 (D.D.C. 2020)). The court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## III. Analysis

Recall that Asim asserts claims under both the Mandamus Act and the APA that Defendants have unreasonably delayed scheduling her consular interview. Those causes of action are identical for present purposes since this Court may award relief as to either only if the

agency unreasonably delayed an action that it is legally required to take. More specifically, a plaintiff can obtain mandamus only if she "demonstrate[s] (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." Am. Hosp. Ass'n v. Burwell, 812 F.3d 183, 189 (D.C. Cir. 2016). "Absent a violation of a clear duty," the court must dismiss the action for lack of jurisdiction. In re Ctr. for Biological Diversity, 53 F.4th 665, 670 (D.C. Cir. 2022); see Am. Hosp., 812 F.3d at 189 ("[U]nless all [three requirements] are met, a court must dismiss the case for lack of jurisdiction."). Similarly, an APA unlawful-delay claim "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004). This requirement, though not jurisdictional under the APA, is a "necessary precondition" of an unreasonable-delay claim. Khazaei v. Blinken, 2023 WL 6065095, at *5 (D.D.C. Sept. 18, 2023).

      In moving to dismiss Asim's suit, the Government contends that her claims are both deficient for two reasons: (1) she identifies no "clear, non-discretionary duty for the State Department or the U.S. Embassy to schedule a visa interview for any particular noncitizen," ECF No. 6 (MTD) at 5; see id. at 5–14; and (2) the year-and-a-half delay that she has experienced is not unreasonable. Id. at 15–25. The Court need not enter into the legal quagmire of differing views on the first issue, see Kassem v. Blinken, 2021 WL 4356052, at *5 (E.D. Cal. Sept. 24, 2021) (holding there is clear duty to schedule consular interviews and collecting cases); Mueller v. Blinken, 682 F. Supp. 3d 528, 534–37 (E.D. Va. 2023) (holding the opposite and collecting cases), because it agrees with Defendants' second contention. It will therefore assume without deciding that Plaintiff is correct that the Government has a clear and non-discretionary duty to schedule her interview and will now evaluate the delay. See da Fonseca v. Emmel, 2024 WL

519603, at *3 (D.D.C. Feb. 9, 2024) (following same approach in similar case); see also Chalabi v. Hashemite Kingdom of Jordan, 543 F.3d 725, 728 (D.C. Cir. 2008) (permissible to assume statutory jurisdiction when granting motion to dismiss).

To assess whether Defendants' delay in scheduling Plaintiff's interview is unreasonable under the APA or the Mandamus Act, the Court turns to the familiar six-factor inquiry outlined in Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) (TRAC):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Id. at 80 (cleaned up); see Bagherian, 442 F. Supp. 3d at 96 ("The standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act.") (cleaned up); Didban, 435 F. Supp. 3d at 177 (similar).

These considerations are often grouped into four basic inquiries. "First, is there any rhyme or reason — congressionally prescribed or otherwise — for an agency's delay (factors one and two)?  Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)?  Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)?  Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?" Rahman v. Blinken, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023) (cleaned up).

The first two factors clearly favor the Government. In this scenario, there is no "congressionally supplied yardstick" providing any indication of a desired speed or timeline for agencies' scheduling of visa interviews, something that Plaintiff concedes. Sarlak v. Pompeo, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020); see ECF No. 7 (Opp.) at 19. In fact, "Congress has given the agencies wide discretion in the area of immigration processing." Skalka v. Kelly, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017). The Court thus turns to the guidance of caselaw to determine the reasonability of this seventeen-month period. Sarlak, 2020 WL 3082018, at *6.

Although there is no bright-line rule, district courts "have generally found that immigration processing delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." Id. (quoting Yavari v. Pompeo, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)). In the context of adjudicating applications of already-interviewed petitioners, many courts have "declined to find a two-year period to be unreasonable as a matter of law." Ghadami v. U.S. Dep't of Homeland Sec., 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (collecting cases); see also Skalka, 246 F. Supp. 3d at 154 (noting that two-year delay "does not typically require judicial intervention"). These particular barometers, moreover, all mark the period of time between an interview and a rendered decision; the totality of the visa-application timeline in these cases would obviously be longer when accounting for the time it takes to schedule the interview. Defendants also identify a rationale for their timetable, citing opinions in this district finding that "the government applies 'a rule of reason' by applying such a first-in, first-out methodology." MTD at 21 (citing L'Association des Americains Accidentels v. U.S. Dep't of State, 633 F. Supp. 3d 74, 82 (D.D.C. 2022)).

7

The third and fifth factors, which both consider the effects of delay, tip the scales only slightly toward Plaintiff, if at all.  The Complaint alleges that Asim and her spouse "have endured significant financial, emotional, and marital hardships as a result of the unreasonable period of time that Plaintiff ASIM's case has been pending in a continued state of administrative processing."  Compl., ¶ 23.  While the Court acknowledges and sympathizes with these difficulties, they do not carry sufficient weight in a TRAC analysis.  See Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 345 (D.C. Cir. 2023) ("The financial harms [plaintiff] alleges, along with the uncertainty that results any time an individual must continue to wait to secure a benefit, are insufficient to tip TRAC factors three and five in his favor.").

Factor four, which is dispositive in some cases, see Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003), strongly supports Defendants.  Plaintiff claims that she "is not asking for her case to be given priority resulting in undue detriment to other visa applicants."  Opp. at 23.  But in requesting that the Court order agencies to schedule her visa interview ostensibly out of turn, this outcome is inevitable.  The D.C. Circuit has found judicial intervention inapt "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain."  Mashpee, 336 F.3d at 1100 (cleaned up).  Even if Plaintiff is at the front of the line already, which she argues is possible, interview scheduling fundamentally involves resource allocation at an embassy, so her request will necessarily entail a "judicial 'reordering [of] agency priorities.'"  Bagherian, 442 F. Supp. 3d at 96 (cleaned up).

The sixth and final TRAC factor is a wash.  A court need not find any impropriety in an agency's inaction in order to deem a delay unreasonable, so Plaintiff's "lack of those allegations does not count against [her] here."  Ghadami, 2020 WL 1308376, at *9.  That said, Plaintiff does

not allege any bad faith but suggests only that impropriety may be uncovered if the case proceeds to discovery. See Opp. at 26–27.

On balance, considering all six TRAC factors, Plaintiff has not carried her burden of establishing unreasonable delay, which means that both her APA and mandamus claims come up short.

## IV.    Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order will issue this day.

/s/ *James E. Boasberg*  
JAMES E. BOASBERG  
Chief Judge

Date:  July 8, 2024